✎AO 241                                                                                                Page 2
(Rev. 10/07)

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| **United States District Court** | District: Southern District |
|---|---|

| Name (under which you were convicted):<br><br>Gary Dubois | Docket or Case No.:<br><br>N.Y. Cty. Ind. No. 448/14 |
|---|---|

| Place of Confinement :<br>Sing Sing Correctional Facility | Prisoner No.:<br><br>16A2727 |
|---|---|

| Petitioner (include the name under which you were convicted) | Respondent (authorized person having custody of petitioner) |
|---|---|
| Gary Dubois            v. | Michael Capra |

| The Attorney General of the State of |
|---|

### PETITION

1.   (a) Name and location of court that entered the judgment of conviction you are challenging:

   New York County Supreme Court

   (b) Criminal docket or case number (if you know):     448/14

2.   (a) Date of the judgment of conviction (if you know):   11/17/2015

   (b) Date of sentencing:     6/21/2016

3.   Length of sentence:     Fifteen years in prison

4.   In this case, were you convicted on more than one count or of more than one crime?     ☑ Yes     ☐ No

5.   Identify all crimes of which you were convicted and sentenced in this case:

   (1) attempted first-degree gang assault, (2) attempted first-degree assault, and (3) second-degree assault.

6.   (a) What was your plea? (Check one)

|   | ☑ (1) | Not guilty | ☐ (3) | Nolo contendere (no contest) |
|---|---|---|---|---|
|   | ☐ (2) | Guilty | ☐ (4) | Insanity plea |

✎AO 241
(Rev. 10/07)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury   ☐ Judge only

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes   ☑ No

8. Did you appeal from the judgment of conviction?

☑ Yes   ☐ No

9. If you did appeal, answer the following:

(a) Name of court:        Appellate Division First Department

(b) Docket or case number (if you know):

(c) Result:               Judgment affirmed

(d) Date of result (if you know):     4/30/2020

(e) Citation to the case (if you know):       182 A.D.3d 518

(f) Grounds raised:

First, the prosecution introduced false evidence in violation of the state and federal constitutions and New York Criminal Procedure Law 440.10. Second, counsel was ineffective under the state and federal constitutions. Third, cell-phone evidence should have been suppressed under the Fourth Amendment and the State Constitution. Finally, the sentence was excessive.

(g) Did you seek further review by a higher state court?        ☑ Yes   ☐ No

If yes, answer the following:

(1) Name of court:    New York Court of Appeals

(2) Docket or case number (if you know):

(3) Result:
        Leave to appeal denied

(4) Date of result (if you know):     9/8/2020

(5) Citation to the case (if you know):     35 N.Y.3d 1093

(6) Grounds raised:
The prosecution introduced false evidence in violation of the state and federal constitutions and New York Criminal Procedure Law 440.10. Also, counsel was ineffective under the state and federal constitutions.

(h) Did you file a petition for certiorari in the United States Supreme Court?          ☐ Yes     ☑ No

If yes, answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know):

(4) Citation to the case (if you know):

10.     Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions

concerning this judgment of conviction in any state court?          ☑ Yes     ☐ No

11.     If your answer to Question 10 was "Yes," give the following information:

(a)     (1) Name of court:     New York Supreme Court, New York County

(2) Docket or case number (if you know):     448/14

(3) Date of filing (if you know):     6/29/2018

(4) Nature of the proceeding:     Motion to vacate the judgment under CPL 440.10

(5) Grounds raised:
The prosecution introduced false evidence in violation of the state and federal constitutions and New York Criminal Procedure Law 440.10. Also, counsel was ineffective under the state and federal constitutions.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes     ☑ No

(7) Result:     Motion denied

(8) Date of result (if you know):     12/17/2018

✎AO 241
(Rev. 10/07)

(b) If you filed any second petition, application, or motion, give the same information:

    (1) Name of court:

    (2) Docket or case number (if you know):

    (3) Date of filing (if you know):

    (4) Nature of the proceeding:

    (5) Grounds raised:

    (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

❑    Yes    ❑    No

    (7) Result:

    (8) Date of result (if you know):

(c) If you filed any third petition, application, or motion, give the same information:

    (1) Name of court:

    (2) Docket or case number (if you know):

    (3) Date of filing (if you know):

    (4) Nature of the proceeding:

    (5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

❏  Yes  ❏  No

(7) Result:

(8) Date of result (if you know):

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1)  First petition:  ☑  Yes  ❏  No

(2)  Second petition:  ❏  Yes  ❏  No

(3)  Third petition:  ❏  Yes  ❏  No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

12.  For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court.  Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:**
The State violated due process by introducing false testimony from its witness, a T-Mobile analyst.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The State alleged that Petitioner ordered an accomplice (Ervin) to stab the complainant by yelling "do it now" during a 1 p.m. sidewalk fight that involved Petitioner, Ervin, Clark, and complainant. At trial, the State introduced a text message, sent from Petitioner to a purported accomplice (Clark), saying "make sure you got something on you." The State claimed this message was a command to bring a weapon to the scene. Petitoner's T-Mobile records state the message was sent at 4:32 p.m. "EST"--three hours after the incident. Nevertheless, the State claimed, based on a T-Mobile analyst's testimony, that the text was actually sent at 12:32 p.m. EST, 30 minutes before the 1 p.m. stabbing. In turn, the State claimed at trial that this text proved that Petitioner planned, and subsequently ordered, the stabbing. The State relied heavily on this text, referring to it as "damning" and "annihilating" evidence. Beyond the "damning" text, the only evidence that Petitioner ordered the stabbing was the unreliable testimony of the complainant, who claimed he heard Petitioner yell "do it now" just before the stabbing. After trial, the T-Mobile analyst recanted, admitting that the "make sure you got something on you" text was actually sent hours after the incident. As shown in the attached memorandum of law, the introduction of the analyst's obviously false testimony violated due process.

(b) If you did not exhaust your state remedies on Ground One, explain why:

(c)     **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ❏ Yes     ☑ No

(2) If you did not raise this issue in your direct appeal, explain why:
This issue was raised on an appeal from the denial of a post-conviction motion to vacate the judgment.
That appeal was consolidated with the direct appeal of the judgment.


(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes     ❏ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:     Motion to Vacate the Judgment Under CPL 440.10

Name and location of the court where the motion or petition was filed:
New York County Supreme Court

Docket or case number (if you know):     448/14

Date of the court's decision:     12/17/2018

Result (attach a copy of the court's opinion or order, if available):
Motion denied.


(3) Did you receive a hearing on your motion or petition?     ❏ Yes     ☑ No

(4) Did you appeal from the denial of your motion or petition?     ☑ Yes     ❏ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?     ☑ Yes     ❏ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:
New York Appellate Division - First Department

Docket or case number (if you know):

Date of the court's decision:     4/30/2020

Result (attach a copy of the court's opinion or order, if available):
Judgment affirmed.


(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground One:

**GROUND TWO:**
 Counsel was ineffective in failing to challenge the false text-message evidence.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

 As shown in the attached memorandum of law, trial counsel was ineffective because he failed to challenge the
 critical text-message evidence. Counsel, among other errors: (1) failed to speak to the T-Mobile trial witness
 before trial regarding the timing of a text message; (2) failed to move to preclude the T-mobile analyst's
 testimony; (3) failed to confront the T-Mobile witness with obvious evidence that the message was sent hours
 after the incident; (4) conceded to the jury that the T-Mobile witness' timing testimony was correct; and (5) failed
 to, at a minimum, establish that the message was, under the State's own timing theory, sent at 11:32 a.m. EST,
 not 12:32 p.m. EST. These blunders worked serious harm to the defense because the text-message evidence
 was powerful evidence corroborating the complainant's otherwise assailable testimony that Mr. Dubois verbally
 ordered the stabbing. See Petitioner's Memorandum of Law.

(b) If you did not exhaust your state remedies on Ground Two, explain why:

(c)     **Direct Appeal of Ground Two:**

        (1) If you appealed from the judgment of conviction, did you raise this issue?        ❐  Yes      ☑  No

        (2) If you did <u>not</u> raise this issue in your direct appeal, explain why:
         This issue was raised on an appeal from the denial of a post-conviction motion to vacate the judgment.
         That appeal was consolidated with the direct appeal of the judgment.

(d)     **Post-Conviction Proceedings:**

        (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

              ☑  Yes     ❐  No

        (2) If your answer to Question (d)(1) is "Yes," state:

        Type of motion or petition:      Motion to Vacate the Judgment Under CPL 440.10

        Name and location of the court where the motion or petition was filed:
          New York County Supreme Court

        Docket or case number (if you know):      448/14

        Date of the court's decision:      12/17/2018

Result (attach a copy of the court's opinion or order, if available):

motion denied

(3) Did you receive a hearing on your motion or petition?   ☐ Yes   ☑ No

(4) Did you appeal from the denial of your motion or petition?   ☑ Yes   ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☑ Yes   ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Appellate Division First Department

Docket or case number (if you know):

Date of the court's decision:   4/30/2020

Result (attach a copy of the court's opinion or order, if available):

Judgment affirmed.

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you :

have used to exhaust your state remedies on Ground Two

**GROUND THREE:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) If you did not exhaust your state remedies on Ground Three, explain why?

(c)     **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ❏ Yes     ❏ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ❏ Yes     ❏ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?     ❏ Yes     ❏ No

(4) Did you appeal from the denial of your motion or petition?     ❏ Yes     ❏ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?     ❏ Yes     ❏ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Three:

**GROUND FOUR:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c)     **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?          ❒ Yes        ❒ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)     **Post-Conviction Proceedings**:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

            ❒ Yes        ❒ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

✎AO 241
(Rev. 10/07)

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?          ❏ Yes     ❏ No

(4) Did you appeal from the denial of your motion or petition?       ❏ Yes     ❏ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ❏ Yes     ❏ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Four:

✎AO 241                                                                                                          Page 13
(Rev. 10/07)

13.     Please answer these additional questions about the petition you are filing:

        (a)     Have all grounds for relief that you have raised in this petition been presented to the highest state court

                having jurisdiction?    ☑ Yes        ☐ No

                If your answer is "No," state which grounds have not been so presented and give your reason(s) for not

                presenting them:

        (b)     Is there any ground in this petition that has not been presented in some state or federal court?  If so,

                ground or grounds have not been presented, and state your reasons for not presenting them:

14.     Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction

        that you challenge in this petition?        ☐ Yes        ☑ No

        If "Yes," state the name and  location of the court, the docket or case number, the type of proceeding, the issues

        raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy

        of any court opinion or order, if available.

15.     Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for

        the judgment you are challenging?        ☐ Yes        ☑ No

        If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the

        raised.

16.    Give the name and address, if you know, of each attorney who represented you in the following stages of the

judgment you are challenging:

(a) At preliminary hearing:


(b) At arraignment and plea:


(c) At trial:

Lenore Furlong, Legal Aid Society, 49 Thomas Street NY NY 10013.
David Moore (current address is unknown)

(d) At sentencing:

Lenore Furlong, Legal Aid Society, 49 Thomas Street NY NY 10013.
David Moore (current address is unknown)

(e) On appeal:

Matthew Bova, Center for Appellate Litigation, 120 Wall Street, 28th Floor, NY NY 10005

(f) In any post-conviction proceeding:

Matthew Bova, Center for Appellate Litigation, 120 Wall Street, 28th Floor, NY NY 10005

(g) On appeal from any ruling against you in a post-conviction proceeding:

Matthew Bova, Center for Appellate Litigation, 120 Wall Street, 28th Floor, NY NY 10005


17.    Do you have any future sentence to serve after you complete the sentence for the judgment that you are

challenging?            ☐ Yes       ☑ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:



(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the

future?                  ☐ Yes       ☐ No

18.    TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain

why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

Tab to continue "TIMELINESS OF PETITION" on next page.

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C.   § 2244(d) provides in

part that:

 (1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in
  custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

  (A) the date on which the judgment became final by the conclusion of direct review or the expiration
   of the time for seeking such review;

  (B) the date on which the impediment to filing an application created by State action in violation of
   the Constitution or laws of the United States is removed, if the applicant was prevented from
   filing by such state action;

  (C) the date on which the constitutional right asserted was initially recognized by the Supreme
   Court, if the right has been newly recognized by the Supreme Court and made retroactively
   applicable to cases on collateral review; or

  (D) the date on which the factual predicate of the claim or claims presented could have been
   discovered through the exercise of due diligence.

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:

The petition for a writ of habeas corpus should be granted and Petitioner should be released from state custody,

or any other relief to which petitioner may be entitled.

_Matthew Bove_

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on _11 - 22 - 2021_ (month, date, year).

Executed (signed) on _11 - 22 - 2021_ (date).

_Gary Dubois_

Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

Friedman, J.P., Kapnick, Webber, Oing, JJ.

11431-                                                    Ind. 448/14
11431A      The People of the State of New York,
                         Respondent,

                   -against-

            Gary DuBois,
                 Defendant-Appellant.
            _____

Robert S. Dean, Center for Appellate Litigation, New York
(Matthew Bova of counsel), for appellant.

Cyrus R. Vance, Jr., District Attorney, New York (Valerie
Figueredo of counsel), for respondent.
            _____

     Judgment, Supreme Court, New York County (Richard D.

Carruthers, J. at suppression hearing; Arlene D. Goldberg, J. at

jury trial and sentencing), rendered June 21, 2016, convicting

defendant of attempted gang assault in the first degree,

attempted assault in the first degree and assault in the second

degree, and sentencing him, as a second violent felony offender,

to an aggregate term of 15 years, and order, same court (Arlene

D. Goldberg, J.), entered on or about December 17, 2018, which

denied defendant's CPL 440.10 motion to vacate the judgment,

unanimously affirmed.

     The court properly denied defendant's CPL 440.10 motion.  A

records custodian's trial testimony about the timing of a text

message sent by defendant on the day of the crime was later

acknowledged to have been mistaken.  However, defendant did not

establish that he was therefore entitled to a new trial on any of

the grounds cited in his motion.  There was no evidence of

misconduct by the prosecutor, and, in any event, there was not even a reasonable possibility that the testimony at issue, whether it is described as "false" or mistaken, contributed to the verdict.  There was overwhelming direct and circumstantial evidence of defendant's guilt, including, among other things, surveillance videotapes and undisputed phone records.  Trial counsel's efforts to challenge the testimony at issue were not deficient under either the state or federal standards (*see People v Benevento*, 91 NY2d 708, 713-714 [1998]; *Strickland v Washington*, 466 US 668 [1984]).  Defendant has not shown that counsel's conduct in this regard fell below an objective standard of reasonableness, or that they deprived defendant of a fair trial or affected the outcome of the case.

The court properly denied defendant's suppression motion. The motion court correctly determined that although the police made an entry in violation of *Payton v New York* (445 US 573 [1980]), suppression of defendant's phone was not required, since the seizure of the phone from defendant's person occurred at the police station and had no connection with the police entry into defendant's residence (*see People v Padilla*, 28 AD3d 236, 237 [1st Dept 2006], *lv denied* 7 NY3d 760 [2006]; *People v Jackson*, 17 AD3d 148 [2005], *lv denied* 5 NY3d 790 [2005]).  Before inspecting the phone, the police obtained an undisputedly valid warrant, which addressed the special privacy concerns involved with phones.

The court providently exercised its discretion in admitting a phone call defendant made while in custody awaiting trial that could reasonably have been interpreted as an admission, or evidence of his consciousness of guilt.  The possibility of innocent interpretations went to the weight to be given this evidence, not its admissibility (*see People v McKenzie*, 161 AD3d 703, 704 [2018], *lv denied* 32 NY3d 1113 [2018]).

In any event, in light of the overwhelming evidence of defendant's guilt, there was no reasonable possibility that any of the errors claimed by defendant contributed to the conviction (*see People v Crimmins*, 36 NY2d 230 [1975]).

We perceive no basis for reducing the sentence.

THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED:  APRIL 30, 2020

CLERK

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  PART 56
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
THE PEOPLE OF THE STATE OF NEW YORK

-against-

GARY DUBOIS,

Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

DECISION AND ORDER
CPL §440.10 Motion

Ind. No. 0448/14

For the People: ADA Germaine Corprew, New York County District Attorney's Office
For the Defendant: Center for Appellate Litigation, by Matthew Bova, Esq.

ARLENE D. GOLDBERG, J.

The defendant was convicted after jury trial, conducted before me, of attempted

gang assault in the first degree  (PL §§ 110/120.07), attempted assault in the first

degree (PL §§110/120.10 [1]) and assault in the second degree (PL §120.05 [2]).  I

subsequently  sentenced the defendant as a second violent felony offender to an

aggregate determinate term of imprisonment of 15 years and 5 years' post release

supervision.

The defendant has moved to vacate the convictions pursuant to CPL §440.10 (1)

(b),( c ) and (h). The motion is predicated on the claim that  a prosecution witness,

Joseph Sierra (Sierra), the custodian of records for T-Mobile/Metro PCS, falsely

testified at defendant's trial regarding the time a text message, which stated "make sure

you have something on you" was sent from the defendant's cellphone number to Torry

Clark's cell phone number.  The defendant asserts that the time the subject text was

sent constituted critical evidence in the case on which the People heavily relied and

which the witness has since recanted. He claims that the convictions were therefore

obtained in violation of his federal and state constitutional rights to due process of law.

The defendant also seeks relief on the ground that his trial attorney provided ineffective assistance in violation of defendant's federal and state constitutional rights by not challenging what his appellate counsel terms Sierra's "obviously- defective text message testimony." <u>See</u>, Bova Affirmation at 12, ¶43. The defendant's appellate counsel asserts in his memorandum of law that, at a minimum, the defendant is entitled to a hearing to determine any questions of fact.

The People filed a response in opposition in which they set forth multiple reasons the defendant's motion to vacate the convictions should be denied in all respects. The People also assert that no hearing is required because even if the recantation is true, no due process violation occurred because there is no allegation that the People were aware of any mistake in Sierra's trial testimony concerning the conversion time nor could there be since, as defense counsel's moving papers show, Sierra did not realize that he made a mistake when he testified at trial until March 12, 2018 when he spoke with defendant's appellate counsel on the phone after reviewing Mr. Dubois' phone records. <u>See</u>, People's Response at ¶4 at 1-2. The People additionally argue that Sierra was not a critical or essential witness nor was the text message at issue critical evidence in their case "as demonstrated by the trial record." <u>Id</u>. ¶5 at 2. The People also contend that there was substantial evidence at trial proving defendant's guilt and that "the single text message at issue was cumulative of other evidence proving that the defendant acted in concert with his co-actors." Id. at ¶6. Lastly, the People maintain that defendant's trial counsel implemented an effective strategy in defending him, "even regarding the text message at issue." <u>Id</u>. ¶7.The People also point to the fact that the defendant was found not guilty of attempted

murder in the second degree as demonstrating that counsel was effective. Id.

The defense submitted a reply asserting, in sum, that the People's claims in opposition are without merit. According to the defendant, the People relied heavily on the text message "make sure you got something on you" as proof that the defendant directed the stabbing that was otherwise solely based on Robinson Sanchez' testimony which defendant's appellate counsel characterizes as "incredible." The defendant additionally maintains that the People's case against him was weak.

Based upon my review of the parties' submissions, including the appendix to defendant's CPL §440.10 motion,[1] the official court file and the relevant law, and due deliberation having been made thereon, the defendant's motion to vacate the judgment and alternative request for a hearing are denied in all respects for the reasons set forth below.

## BACKGROUND

I

The indictment in this case charged the defendant with attempted murder in the second degree (PL §§110/125.25), attempted gang assault in the first degree (PL §§ 110/120.07), attempted assault in the first degree (PL §§110/120.10 [1]) and assault in the second degree (PL §120.05[2]). On November 5, 2012, defendant's jury trial on these charges commenced before me. The contention of the People was that on January 11, 2014, at around 1:00 p.m., on 4th street near Avenue A, the defendant committed the crimes charged in the indictment by acting in concert with his son

---

[1] The appendix consists of pretrial proceedings, the trial record and some of the exhibits the People introduced in evidence at the trial.

Timothy Ervin (Timmy) and Torry Clark (Torry) in an attack on Robinson Sanchez
(Sanchez) during which Timmy stabbed Sanchez at the direction of the defendant.

Sanchez was one of the witnesses called by the People at the trial.  In pertinent
part, he testified to a conversation he had with the twin girls on the street around noon
that day concerning their Uncle Brian, saying that Michael Diaz, Sanchez' 16-year old
cousin, was a fake Blood.  He asked the girls to call Brian (defendant's brother) to
come to the block so they could speak about it.  One girl said okay.  Sanchez then
heard her tell someone on the phone, "This big guy just came up to me threatening you,
you better come down here." A 138/TT28.[2]  Sanchez then told her, "[you] ain't got to
lie. . . Just to talk." Id.  The girl then made another call and Sanchez heard her say,
"Jumping [sic] the cab. . . hurry up . . . He's big.  He came up to us, and Brian and . . . a
whole bunch of fabricated information." A 140/ TT 30.  Brian soon appeared and they
smoothed things out whereupon Brian and the people he came with left. A140/TT30-31.

Sanchez testified that five minutes later, he observed the defendant, Timmy and
Torry approaching him and his cousin Michael Diaz who were standing together on the
sidewalk.  As they approached, Timmy threw a bottle that hit a wall five feet behind
Sanchez. A147/TT37.  Timmy and Torry then surrounded Diaz and the defendant came
up to Sanchez and asked him several times why he had pulled a knife on his daughter.
Sanchez responded that no one had pulled a knife on any girls. A147-148/ TT37-38.
Sanchez then heard Timmy ask Diaz a few times who pulled a knife on his sister and

---

[2] The A refers to the appendix to defendant's motion to vacate the judgment followed by the
appendix page number.   TT and the number following it refers to the corresponding page of the trial
transcript referenced in the appendix.

then push Diaz.  Sanchez who had observed that Timmy had a knife in his hand when he had first come on the sidewalk which he tucked away, told Diaz to run and seconds later, Diaz did so.  Sanchez tried to run as well but the defendant gave chase and pulled Sanchez back by his collar whereupon Sanchez slipped on liquid and fell to the ground. A 151-152/TT 41- 42.   Sanchez testified that Timmy and Torry who had gone after Diaz then returned to where Sanchez was and that Torry then joined the defendant in hitting and kicking him[3] four to five times while Timmy stood a few feet behind Torry with his hands at his side looking scared. A155/TT 45.  When the hitting stopped, Sanchez heard the defendant say to Timmy, "Don't be a pussy. Do it." A155/TT 45.  Seconds after the defendant said that, Timmy thrust a knife into Sanchez' side and then fled the scene with the defendant and Torry.

Thereafter, an ambulance responded to the scene and Sanchez was removed to the hospital where he was treated for a two inch deep stab wound to the right flank which almost touched his ribs. A158-161/TT 48–51.

Sanchez spoke with Detective Esposito at the hospital and also at the precinct. Sanchez admitted that he never told the Detective that the defendant directed anyone to do anything explaining that at the time he did not know what he was going to do about the attack.  A 222 -224/ TT 112-114.

Michael Diaz also testified for the People at the trial. See, Diaz testimony at

---

[3]In his memorandum of law, defendant's appellate counsel states that it was Torry and Timmy who kicked and punched the victim while the defendant stood to the side. See, Bova memorandum of law at 2.  While that interpretation is understandable given that Sanchez used many pronouns, the totality of his testimony, at least in this Court's view, indicates that Timmy did not participate in punching or kicking Sanchez. Nevertheless, even if counsel's interpretation of the testimony is correct, it would not change the outcome of the instant motion.

A362-375/TT251-264.  His account of the events was largely consistent with Sanchez' testimony.   He identified the participants and what he saw each of them do by the color of the jacket each one was wearing on the day of the incident, which were a green jacket, a black jacket and a grey jacket. Although he knew them, Diaz would not provide the names of the persons wearing the  jackets. However, video footage and the testimony of Sanchez established that the defendant wore the black jacket, Timmy the green jacket and Torry the grey jacket.

Diaz testified that the person wearing the green jacket had thrown the bottle and was also the one who flashed a knife in his face while the one in the black jacket and the one in the grey jacket were speaking to Sanchez, who twice told him to run. Diaz did so but after going 30 steps turned around to see what was happening.  He then saw the three people surrounding Sanchez and that two of them were punching him.  In relation to Sanchez, Diaz believed the person in black was at the head of him, the one in grey on the side of him and the one in green was a couple of steps behind the person in black.  He testified that after Sanchez was being punched, he saw the person in green stab him.  Diaz did not give any testimony as to whether or not he heard anyone direct the stabbing or say don't be a pussy do it.

Diaz went to the hospital with Sanchez in the ambulance.

Video surveillance footage that captured some of the events was retrieved by Detective Esposito and entered into evidence as People's exhibits 4 and 5. [4]  The footage showed inter alia, Sanchez' interaction with the twins and the actions of his

---

[4]A compilation of the two videos was also entered into evidence by the People as exhibit 7, through an employee of the New York County DA's Office (Ms. Michelle Ho).

group and the group Bruce was with. <u>See</u>, A 163-180 / TT 53 -70.   It also showed Timmy throw the bottle and Timmy, defendant and Torry approach Sanchez and Diaz, who are standing together on the street and surround them. It also shows, <u>inter alia</u>, the defendant, Timmy and Torry run away together after Sanchez testified he had been stabbed and walked into the street.   A180-183/ TT 70-73.

Recordings of telephone calls that the defendant made from Riker's Island were also entered into evidence by the People through an employee of the NYC Department of Corrections.   The contents of the calls are annexed to the Defendant's Reply as Exhibit A.   In the February 5, 2014 call, the defendant admits he was there.   In the February 6, 2014 call, the defendant wonders why he was charged with attempted murder and not "him" (Torry) and defendant goes on to state that charge should be on all of us.   In that same call, defendant also expresses concern that someone is snitching.   "I don't give a fuck, it would be mine and EJ's word against his."   In the February 14, 2014, call the defendant also expresses concern about the person (Torry) snitching indicating that if he's snitching he's got to get it. And "if he spoke to the police because the statement that I seen is saying that he said that me and Timmy did everything."

Detective Esposito, also testified for the People at trial.  He recounted retrieving a piece of paper from the defendant after the defendant's arrest which was admitted as People's 14 which listed names and phone numbers of, <u>inter alia</u>, Charlene, Gabby and Tim. He also recounted that Sanchez provided him with the names and/or addresses of the three individuals involved in the stabbing.  A259-264/TT149-154.

The People also called David Chan (Chan), the deputy director of the high tech

analysis unit of the New York County District Attorney's office. He testified regarding the physical extractions he made of defendant's cell phone and Torry Clark's cell phone, People's exhibits 21 and 22, respectively. [5]  In pertinent part, he listed some of the contacts in defendant's phone which were Charlene daughter and her telephone # 347-994-5740, Gabby daughter and her telephone # 347-982-1688 and contact 88 "my number" 347-737 1415, which was the number for defendant's phone reflected on the Sim card.  As to exhibit 22, Torry Clark's cell phone, Chan testified that based on the extraction, Clark's cell phone number was 917-405 -8737 and that Clark's contacts included Charlie and the phone # 347-737-1415 and Timmy telephone # 347-982-3111.

Chan also testified based on People's 21 and 22, that on January 11, 2014, Torry Clark's phone received an incoming text from defendant's phone that read, "Make sure you got something on you."  A389/ TT 278.  He further testified that on that same date, Torry Clark's phone sent an outgoing text to defendant's phone saying "Ight."  The outgoing text message was sent approximately a minute and nine seconds after the incoming text was received.  A404/TT 293.   Chan was unable to testify as to the timing of when these messages were sent or received.  According to Chan, "depending on how the cell phone saves your dates and times, it is usually saved in UTC Time. Universal Time.  And then from everywhere else, depending on where you live, Eastern Standard Time is either minus five or minus four from the UTC Time.  Depending on what time zone you are in, that's what should be displayed."  A391/TT280.   Chan

---

[5]People's 21 and People's 22 were not included as exhibits in defense counsel's motion to vacate or in the People's response.

-8-

further testified that he could not determine the actual times these texts were sent and received and the "best practice is to get the cell phone provider to provide the correct time." A392/TT 281.   Chan explained the time in the extraction for 289 and 288 is the time the device saved the text messages. A406/TT 294.  However, he never explained what that meant.

Joseph Sierra, the custodian of records for T-Mobile/Metro PCS, was also called as a witness for the People about the call detail and text message detail for the phone number 347- 737-1415 (defendant's phone number).   During his testimony, the call detail records and SMS (text messages) records of phone number 347-737-1415 were entered into evidence as People's exhibit 23 & 24, respectively.  A407-409/ TT 296-298.

With respect to People's 23, he testified that the records showed that on January 11, 2014 at 12:28 p.m.,there was a 33 second call from Charlene (defendant's daughter) to defendant's phone, at 12:39 p.m., a 44 second call from defendant's phone to Charlene's phone at 12:42 p.m. a one minute one second call from the defendant's phone to Gabby (defendant's daughter's phone) at 12:44 p.m., a 13 minute 45 second call to defendant's phone from Charlene's phone at 1:00 p.m, a one minute 29 second call from the defendant's phone to Charlene's phone, after two other listed calls from Charlene's phone to defendant's phone there is a call at 1:07 p.m. to defendant from Timmy's phone number at 1:08 p.m., there was a 12 second call from defendant to Timmy at 1:08 p.m., a 23 second call from the defendant's phone to Charlene's phone number and at 1:08 p.m., an 11 second call from Timmy's phone number to the defendant's phone number.  After that there were no incoming or

outgoing calls on the defendants' phone until 16:31 hours on January 11, 2014.  A 410-415/TT 298-305.

As to People's Exhibit 24, Sierra testified that EST5EDT, under the time zone column is the "time code stamp for the conversion from UTC to eastern time."  A424/TT 313.  He testified that their records were recently, in the end half of 2014, changed into UTC (universal time).  Mr. Sierra explained that, "it is just a minus four, minus five from universal time, Greenwich Mean time over by the U.K., subtracting four or five hours, depending on whether it is daylight savings or not, telling us essentially that it is eastern time for this record."  Id.  According to Mr. Sierra, the first text message sent from the defendant's cell phone (347-737-1415) to Torry Clark's cell phone (917-405-8737) was on January 11, 2014 at 16:32, which is 4:32 and then, since it is universal time you subtract four hours, so the time of the text was 12:32 p.m.  A 425-426/ TT 313-314.  He testified that then there is a response from 917-405-8737 at 16:33:58 which would be 12:33 p.m.  A425/ TT 314.  Mr. Sierra testified that in January, daylight savings time is not in effect in New York.  A428/ TT 317.  However, he explained that universal time fluctuates depending on the location and the specific date so you actually need to go to a UTC conversion site and is not necessarily five hours subtracted from the times listed.  According to his records, he utilized a website to obtain the correction conversion time which he concluded was negative four hours for the relevant texts.  A429-430/ TT 318-319.  Mr. Sierra subsequently conceded that he was not sure whether it was daylight savings or not.  A431/ TT 320.

The defense called one witness, Ms. Lisa Brown, a digital forensic investigator employed at the Legal Aid Society.  She testified, in relevant part, that in New York, we

are in eastern time which is generally five hours behind universal time except during daylight savings time.  A457-458/TT 346-347.  Ms. Brown explained that between the second Sunday in March through the first Sunday in November, EST is minus four hours from UTC and otherwise is it minus five hours.  She explained that in January, eastern standard time would always be five hours being UTC.  A459/ TT348.

Following summations, the jury was charged and on November 17, 2015, the jury found the defendant not guilty of attempted murder and guilty of the other three counts - attempted gang assault in the first degree (PL§§ 110/120.07), attempted assault in the first degree (PL §§110/120.10 [1]) and assault in the second degree (PL§ 120.05 [2]).

On June 21, 2016, I sentenced the defendant as a second violent felony offender, as previously recounted,  to an aggregate determinate term of imprisonment of 15 years and 5 years' post release supervision.[6]

The events that occurred after that are detailed in the instant motion to vacate the judgment of conviction filed by defendant's appellate counsel, Matthew Bova, Esq., an attorney with the Center for Appellate Litigation,  precisely one year after the Appellate Division had assigned them to defendant's case.

<u>THE INSTANT MOTION</u>

In his motion, Mr. Bova recounts reviewing the trial transcript and exhibits and noticing that the records reflected a time of 4:32 EST for the outgoing message from

---

[6]The defendant was sentenced to concurrent determinate terms with 5 years post release supervision on the three counts- fifteen years on the attempted first degree gang assault and attempted assault in the first degree counts and 7 years on the second degree assault.

-11-

the defendant's cell phone number to Torry's cell phone number.  After that, on March 6, 2018, he states that he contacted  Mr. Sisay Tekne of the T-Mobile/Metro PCS Law Enforcement Division, who  "confirmed that the time listed in Mr. DuBois' text records was in Eastern Standard Time." See, Bova Affirmation at page 9 ,¶29.  He further states that the following day, the manager of Law Enforcement Relations sent him the glossary for analyzing the records, which counsel states, "does not even remotely suggest that the time must be 'adjusted' from 'UTC' time..." Id. ¶30.

Mr. Bova further states that on March 12, 2018, Joseph Sierra spoke with him on the telephone after reviewing Mr. Dubois' phone records and that Sierra informed him during that call that he "now realized that he had a made a mistake when he testified at trial." ( id. at 10 ¶ 31) and "confirmed that the 4:32 p.m. time listed in Mr. DuBois' records was already adjusted to EST." Id.  at ¶ 32. Mr. Bova states that  Mr. Sierra explained that "he made a mistake because he applied a new time zone protocol that was not yet in effect when Mr. DuBois' records were created. Under that new protocol, the text time is listed in UTC time and thus must be  adjusted " Id. Defense counsel additionally states, "Thus, Mr. Sierra conveyed, the text was actually sent at 4:32 p.m." Id.  Mr. Sierra subsequently told defendant's appellate counsel that he could not provide an affidavit because T- Mobile corporate counsel would not allow him to do so but that he would be fully available  to testify upon a subpoena. Id. at ¶33.

Based on Sierra's recantation of his trial testimony, defendant's appellate counsel subsequently filed the motion to vacate the judgment pursuant to the previously mentioned subdivisions of CPL §440.10 which was followed by a response from the People and a submission in reply by appellate counsel.

## DISCUSSION

At the outset, it must be mentioned that defendant's appellate counsel claims in his reply submission that "[t]he prosecution does not challenge Sierra's recantation and thus concedes that the text message ('make sure you got something on you') was sent hours *after* the incident in question. Bova Aff.¶24-39." See, Bova Reply at 1 (emphasis in the original.)   I do not read the People's response as a concession of anything because the prosecutor specifically stated in his response,"[t]he mistaken testimony given by Mr. Sierra regarding when the single text message was sent, *if true*, ... " See, Corprew Response at ¶ 5 at 2 (emphasis supplied). In this regard, it cannot be overlooked that there is no affidavit from Sierra.  According to defendant's appellate attorney, Sierra told him that corporate counsel would not allow him to provide one but that Sierra is willing to testify if subpoened.    The absence of an affidavit however does not require a hearing because this Court will assume for purposes of this decision, that the subject text, "make sure you have something on you" was sent to Torry Clark's phone at 4:32 p.m. and not 4 hours earlier at 12:32 p.m.,  as Sierra had testified to at the trial.

It also bears noting that some of the claims appellate counsel makes in his memorandum of law concerning the prosecutor's conduct at the trial are simply not supported by the record which this Court has reviewed multiple times to determine if they were.  For instance, appellate counsel argues that the prosecutor misled the jury about a "phone was off theory."  See, page 7 of Bova's Memorandum of law.  However, the prosecutor never made such an argument nor did the prosecutor expressly argue to the jury that the defense theory that the text was sent at 11:32 a.m. because daylight

savings was not in effect was wrong. Id. at 15.   The concept that it was a saved message was introduced by Chan and not initially solicited by the prosecutor.  The prosecutor's question if the record reflected when the message was saved appears to be nothing more than a question to clarify what Chan had said.   Inasmuch as no one explained what a saved message meant,  one can hardly claim, as defendant's appellate counsel does here, that the prosecutor was asserting a phone was off then turned back on and/ or massive coincidence theory. Id. at 7.   Furthermore, the prosecution never argued that the text, "make sure you have something on you" was proof that the defendant directed Timmy to stab Sanchez. Appellate counsel's claims otherwise are rejected.  And such an argument given the proof in this case would not have been reasonable or persuasive since the subject text was sent to Torry and not to Timmy. At best, it's a direction to Torry to have a weapon on him.  Appellate  counsel argues that the prosecutor used the word annihilating thus demonstrating the importance of the text as critical evidence that the defendant directed Timmy to stab Sanchez.   However, that is not completely accurate.   The prosecutor  stated in his summation, "[y]ou saw text messages from Charlie DuBois to Torry Clark that annihilate any doubt that Charlie DuBois did not come to 4th Street looking to cause serious physical and death." A521/TT410.  The argument addressed solely defendant's intent.  The premeditation comment by the prosecutor also solely related to defendant's intent.

In short, this Court does not find that the time of the subject text was critical evidence in this case since the text does not constitute any proof that the defendant directed Timmy to stab Sanchez.  The proof that he did came not from the text but from the testimony of the victim Robinson Sanchez, who was unrelenting in his testimony

that he heard the defendant say to Timmy, "[d]on't be a pussy. Do it" just before Timmy stabbed him. A155/TT45. The arguments that Appellate Counsel raises in the instant motion in support of the claim that Sanchez was not a credible witness were all raised by his trial counsel before the jury. The jury saw Sanchez's poor demeanor, hostility and refusal to answer questions. That he was a member of the Bloods and was convicted of a sex crime against a child, including details of what he did to the child, as well as his having committed the crime of criminal contempt by violating a court order, and all other deficits counsel mentions concerning his credibility were all presented to the jury. The jury obviously credited his testimony. The Riker's call in which the defendant states that not just he but all of them should be charged with attempted murder was strong evidence in corroboration of Sanchez' testimony. Appellate counsel's claims that the Riker's calls were innocuous is rejected. In addition to that, Michael Diaz' testimony as well as the surveillance video and the previously recounted cell phone calls constituted powerful evidence that defendant, Timmy and Torry were acting in concert in the attack on Robinson Sanchez.

I find that there is no reasonable possibility that Sierra's false testimony about the timing that the text message was sent impacted the verdict

## INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

In order to establish a violation of the federal constitutional right to the effective assistance of counsel, a defendant must establish both that the attorney's performance was deficient by failing to meet an objective standard of reasonableness, and, but for counsel's errors, there is a "reasonable probability" that the outcome of the proceedings would have been different. See, Strickland v. Washington, 466 US 668,

-15-

687 (1984).  Under New York law, a more flexible standard is applied to determine whether defendant has been denied his right to the effective assistance of counsel under Article I § 6 of the New York State Constitution. See, People v. Benevento, 91 NY2d 708 (1998).   The focus centers on the "fairness of the process as a whole." Id. at 714.  The core inquiry is whether the defendant has received "meaningful representation."  See, People v. Baldi, 54 N.Y.2d 137 (1981). "So long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met." Id. at 147.

None of defendant's claims establish a violation of either the federal or state constitutional standards.   Trial counsel made motions in limine, a compelling opening address and a passionate and equally compelling summation.  He discussed all the weaknesses in the People's case and why the jury should not credit Sanchez' testimony.  His cross examination of Sanchez was thorough and exhaustive to the point that Sanchez complained that he was not going to answer any more questions.  His cross examination of the other witnesses was also thorough and effective.  In fact, defendant's trial counsel elicited from Sierra that he was not  sure if it was daylight savings time in January.  Defendant's trial counsel  also called a witness who testified that it was daylight savings time which was consistent with what the People's witness Mr. Chan had said.   Arguing that the call was at 11:32 a.m. was a reasonable strategy since it was well before the defendant's daughters made any calls to defendant's cell phone.  To claim  that counsel was ineffective for not reaching out to T-Mobile about the records during the trial when the People had represented that there would be a

witness to testify that the call was at 12:32 p.m. is unpersuasive since the witness the People ultimately called was Sierra, their custodian of records.   He described the process by which he determined the time which included the computer check for the time conversion from UTC time which he explained was not a time zone.

Even assuming it was error for defense counsel not to reach out to T-Mobile, the defendant was not prejudiced since as previously discussed, I find that the time of the text was not critical evidence and did not impact the verdict.

In sum, I find that the defendant's federal and/or state constitutional right to effective assistance of counsel was not violated.

<u>CONCLUSION</u>

For all of the above stated reasons, defendant's motion to vacate the judgment pursuant to CPL §440.10 (1)(b),( c ) and (h) is denied in all respects.  The defendant's request for a hearing is also denied as there are no factual issues that need to be decided for the determination of the motion.

Any claims made by the defendant not specifically addressed herein are found to be without merit.

The foregoing constitutes the decision and order of the Court.[7]

Dated: December 17, 2018
     New York, New York

ARLENE D. GOLDBERG, J.

HON. ARLENE D. GOLDBERG

---

[7]The parties were notified on December 5, 2018, that the motion was denied and that the written decision would be furnished when completed.  This is the written decision which explains the reasons the motion was denied.

-17-